**JENNER & BLOCK LLP**
David Singer (Cal. Bar No. 204699)
dsinger@jenner.com
Kate Spelman (Cal. Bar No. 269109)
kspelman@jenner.com
633 West 5th Street Suite 3600
Los Angeles, CA 90071-2054
Telephone:   (213) 239-5100
Facsimile:   (213) 239-5199

**JENNER & BLOCK LLP**
Tassity S. Johnson (*admitted pro hac vice*)
tjohnson@jenner.com
1099 New York Avenue, NW Suite 900
Washington, DC 20001-4412
Phone:        (202) 639-6000
Facsimile:   (202) 639-6066

Attorneys for Defendant Apple Inc. (erroneously sued as Apple, Inc.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBASSADOR MARC GINSBERG AND THE COALITION FOR A SAFER WEB,<br><br>                         Plaintiffs,<br><br>          v.<br><br>APPLE, INC.<br><br>                         Defendant. | Case No. 5:21-cv-00425-EJD<br><br>Honorable The Honorable Edward J. Davila<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     September 30, 2021<br>Time:     9:00 a.m.<br>Dept.:    Courtroom 4<br>Judge:   The Hon. Judge Edward J. Davila<br><br>Complaint Filed: January 17, 2021<br>First Amended Complaint Filed: May 28, 2021 |

1    TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on September 30, 2021 at 9:00 a.m., or soon thereafter as the Court

3    is available, in Courtroom 4 of the federal courthouse located at 280 South 1st Street, San Jose, CA 95113,

4    Defendants Apple Inc., erroneously sued as Apple, Inc., ("Apple") will, and hereby does, move to dismiss

5    Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds

6    that it is barred by Section 230 of the Communications Decency Act and fails to state a claim on which

7    relief can be granted, and Federal Rule of Civil Procedure 12(b)(1) for lack of Article III and statutory

8    standing.

9    Apple's Motion is based on this Notice of Motion and Motion, the following Memorandum of

10   Points and Authorities, any additional briefing on this subject, the Court's file in this action, the evidence

11   and arguments that will be presented to the Court at the hearing on this matter, and any other matter that

12   the Court may properly consider.

13

14   Dated:  June 25, 2021                              JENNER & BLOCK LLP

15

16                                          By: */s/ David R. Singer*

17                                              David R. Singer
                                                Attorney for Defendant Apple Inc.

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:21-cv-00425-EJD
APPLE'S NOTICE OF MOTION AND MOTION; MEMORANDUM

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................... 1

II.    BACKGROUND ............................................................................................................. 3

      A.     Apple Operates the App Store Where Users Can Download Third-Party Apps Containing Third-Party Content. ....................................................................... 3

      B.     Telegram Is a Third-Party Text Messaging App Available in the App Store. .................... 5

      C.     Ginsberg Bought an iPhone After It Was Widely Known That Third Parties Were Using Telegram to Share Offensive User-Generated Content. ........................................ 6

      D.     Plaintiffs Seek to Hold Apple Liable for User-Generated Content Posted in Telegram. ..... 7

III.    ARGUMENT ................................................................................................................. 7

      A.     Section 230 Bars Plaintiffs' Claims Because Plaintiffs Seek to Hold Apple Liable As the Publisher of Third-Party Content Within a Third-Party App. ............................................. 7

            1.     Under Section 230(c)(1), Apple Cannot Be Treated As A Publisher Of Third-Party Content. ................................................................................... 8

            2.     Under Section 230(c)(2), Apple Also Cannot Be Held Liable For Its App Store Content Moderation Decisions. .......................................................... 12

      B.     The FAC Must Be Dismissed for Lack of Standing. ................................................ 13

            1.     Ginsberg Lacks Article III Standing to Pursue His NIED Claim. ......................... 13

            2.     Plaintiffs Lack Article III and Statutory Standing to Pursue Their UCL Claims. .. 15

      C.     The FAC Must Be Dismissed for Failure to State a Claim ........................................ 18

            1.     Ginsberg Fails to State a Claim for Negligent Infliction of Emotional Distress. ... 19

            2.     Plaintiffs Fail to State a Claim for Violation of the "Unfair" Prong of the UCL. .. 22

            3.     Plaintiffs Fail to State a Claim for Violation of the "Unlawful" Prong of the UCL. ............................................................................................... 23

      D.     Plaintiffs' FAC Should Be Dismissed Without Leave to Amend. ................................ 25

IV.    CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...................................................................................18, 19

*Barnes v. Yahoo! Inc.,*
570 F.3d 1096 (9th Cir. 2009) ...............................................................8, 10, 12

*Bennett v. Google, LLC,*
882 F.3d 1163 (D.C. Cir. 2018) ......................................................................10

*Birdsong v. Apple, Inc.,*
590 F.3d 955 (9th Cir. 2009) ...............................................................16, 17, 18

*Burgess v. Superior Court,*
2 Cal. 4th 1064 (1992)...............................................................................19, 20

*Caraccioli v. Facebook, Inc.,*
167 F. Supp. 3d 1056 (N.D. Cal. 2016) ....................................................10, 11

*Carafano v. Metrosplash.com, Inc.,*
339 F.3d 1119 (9th Cir. 2003) ..........................................................................9

*Carter v. Rasier-CA, LLC,*
No. 17-3, 2017 WL 4098858 (N.D. Cal. Sept. 15, 2017 ................................20

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
598 F.3d 1115 (9th Cir. 2010) ........................................................................14

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983)...........................................................................................13

*Clark v. Cty. of Tulare,*
755 F. Supp. 2d 1075 (E.D. Cal. 2010)...........................................................20

*Coffee v. Google, LLC,*
No. 20-3901, 2021 WL 493387 (N.D. Cal. Feb. 10, 2021) ......................8, 9, 11

*Conservation Force v. Salazar,*
646 F.3d 1240 (9th Cir. 2011) ........................................................................18

*Doe v. CVS Pharmacy, Inc.,*
982 F.3d 1204 (9th Cir. 2020) ........................................................................22

*Domen v. Vimeo, Inc.,*
991 F.3d 66 (2d Cir. 2021)..............................................................................13

*Dyroff v. Ultimate Software Group, Inc.*,
  No. 17-5359, 2017 WL 5665670 (N.D. Cal. Nov. 26, 2017) ....................................................11

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020)..........................8, 11, 20

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012) ................................................................................23

*Ess v. Eskaton Properties, Inc.*,
  97 Cal. App. 4th 120 (2002) ................................................................................................20

*Evans v. Hewlett-Packard Co.*,
  No. 13-2477, 2013 WL 5594717 (N.D. Cal. Oct. 10, 2013) ..................................................9

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) .........................................................................................9, 10

*Free Kick Master LLC v. Apple Inc.*,
  140 F. Supp. 3d 975 (N.D. Cal. 2015) .........................................................................9, 11, 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)........................................................................................................14, 15

*Goddard v. Google, Inc.*,
  640 F. Supp. 2d 1193 (N.D. Cal. 2009) ................................................................................11

*Green v. Am. Online (AOL)*,
  318 F.3d 465 (3d Cir. 2003)...................................................................................................12

*Gu v. BMW of N. Am., LLC*,
  132 Cal. App. 4th 195 (2005) .........................................................................................19, 20

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016) .................................................................................................8

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) .................................................................................................5

*Koala v. Khosla*,
  931 F.3d 887 (9th Cir. 2019) ...................................................................................................4

*In re M.S.*,
  10 Cal. 4th 698 (1995) ...........................................................................................................24

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006) ...................................................................................................4

*McGee v. S-L Snacks National*,
  982 F.3d 700 (9th Cir. 2020) .................................................................................................17

iv

*McIntyre v. The Colonies-Pac., LLC*,
    228 Cal. App. 4th 664 (2014) ................................................................................. 19

*McVicar v. Goodman Glob., Inc.*,
    1 F. Supp. 3d 1044 (C.D. Cal. 2014) ....................................................................... 16

*Miller v. Yokohama Tire Corp.*,
    358 F.3d 616 (9th Cir. 2004) ................................................................................... 25

*PC Drivers Headquarters, LP v. Malwarebytes Inc.*,
    371 F.Supp.3d 652 (N.D. Cal. 2019) ......................................................................... 8

*Pennie v. Twitter, Inc.*,
    281 F. Supp. 3d 874 (N.D. Cal. 2017) ................................................................ 12, 13

*People v. Lashley*,
    1 Cal. App. 4th 938 (1991) ...................................................................................... 24

*People v. McCoy*,
    25 Cal. 4th 1111 (2001) ........................................................................................... 24

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ................................................................................... 8

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) ......................................................................................... 19, 20

*Reyes-Aguilar v. Bank of Am. N.A.*,
    No. 13-5764, 2014 WL 2153792 (N.D. Cal. Mar. 20, 2014) ................................... 25

*So v. Shin*,
    212 Cal. App. 4th 652 (2013) .................................................................................. 21

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ................................................................................. 25

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
    992 F. Supp. 2d 962 (C.D. Cal. 2014) ..................................................................... 18

*Taleshpour v. Apple Inc.*,
    No. 20-3122, 2021 WL 1197494 (N.D. Cal. Mar. 30, 2021) ................................... 14

*Taylor, et al. v. Apple, Inc.*,
    No. 3:20-cv-03906-RS, ECF No. 46 (March 19, 2021) ........................................... 12

*Thing v. La Chusa*,
    48 Cal. 3d 644 (1989) .............................................................................................. 19

*Union Pac. R.R. Co. v. Ameron Pole Prods. LLC*,
    43 Cal. App. 5th 974 (2019) .................................................................................... 21

v

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ............................................................................. 3

*Zeran v. America Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ............................................................................ 11

*Zixiang Li v. Kerry*,
  710 F.3d 995 (9th Cir. 2013) ............................................................................ 25

**Constitution**

U.S. Constitution Article III ............................................................................ *passim*

**Statutes**

47 U.S.C. § 230 ................................................................................................. *passim*

Cal. Civ. Proc. Code § 335.1 ................................................................................ 21

California Business and Professions Code § 17200 ............................................... 22

Penal Code § 422.6 ........................................................................................... *passim*

**Court Rules**

Fed. R. Civ. P. 12 ......................................................................................... 4, 7, 8, 18, 14

Case No. 5:21-cv-00425-EJD
APPLE'S NOTICE OF MOTION AND MOTION; MEMORANDUM

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      <u>INTRODUCTION</u>**

Plaintiffs Ambassador Marc Ginsberg and his organization, the Coalition for a Safer Web ("CSW"), seek to combat the proliferation of anti-Semitic and racist hate speech.  Despite their worthy cause, this Court is the wrong forum for Plaintiffs to air their grievances, and Defendant Apple Inc. ("Apple") is the wrong target of their ire.  In response to Apple's motion to dismiss their original complaint, Plaintiffs filed a First Amended Complaint ("FAC"), which fails to cure any of the defects identified in Apple's initial motion and confirms that this lawsuit has nothing to do with Apple's conduct or Plaintiff Ginsberg's use of his iPhone.  Rather, this lawsuit seeks to challenge the mere existence of the Telegram Messenger app ("Telegram") and third-party speech transmitted through that app.  Under well-settled federal law, Plaintiffs' claims are statutorily barred, and Plaintiffs lack Article III standing.  And, under equally settled California law, the FAC fails to establish statutory standing or state any cognizable cause of action against Apple.  Accordingly, Plaintiffs should not be granted any further opportunity to amend their complaint.

In a nutshell, Ginsberg claims he has suffered emotional distress caused by the anti-Semitic speech of some of the 500 million third parties worldwide who use Telegram, a popular app that allows users to communicate privately, or in large groups, through their mobile devices or computers.  Rather than blaming the Telegram users who posted the offensive speech in question, Ginsberg sued Apple for negligent infliction of emotional distress ("NIED"), seeking to hold an interactive computer service provider liable for the speech of third-party users on a third-party app.  He alleges that Apple was negligent because it failed to remove Telegram from its App Store and failed to fully enforce its App Store Review Guidelines (the "Guidelines"), which provide guidance solely to app developers regarding the moderation of user-generated content in apps seeking entry into the App Store.  Both Plaintiffs are also suing Apple under California's unfair competition law ("UCL"), claiming that Ginsberg was deprived of a "key benefit" of his iPhone in the form of an App Store free from offensive third-party content, and that Apple's decision not to remove Telegram from the App Store somehow amounts to aiding and abetting a hate crime.

The FAC fails for multiple independent reasons.  To begin with, Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, expressly bars all claims (including NIED and

Case No. 5:21-cv-00425-EJD
APPLE'S NOTICE OF MOTION AND MOTION; MEMORANDUM

UCL) against interactive computer services, like Apple's App Store, where the claim seeks to hold the service liable for alleged harm caused by user-generated content.  The Ninth Circuit has clearly held that Section 230 provides broad immunity to interactive computer services, and those services cannot be sued because of their decisions to allow or remove user-generated content on their platforms.  Plaintiffs ignore the ocean of authority precluding such claims in seeking to hold Apple liable for precisely this reason.  Plaintiffs' entire FAC should therefore be dismissed with prejudice.

Plaintiffs' NIED and UCL claims should also be dismissed because the FAC fails to meet the gateway standing requirement under Article III of the U.S. Constitution, a necessary predicate for this Court's subject matter jurisdiction, as well as the statutory standing requirement under the UCL.  Most significantly, Plaintiffs fail to allege any injury that is fairly traceable to Apple's conduct.  The FAC *still* does nothing to connect the dots between any act or omission by Apple and Ginsberg's purported emotional distress, or the alleged deprivation of a "key benefit" of his iPhone.  Even with an opportunity to amend, Ginsberg does not allege that he ever downloaded Telegram to his iPhone; he does not allege that he ever used his iPhone to access Telegram; and he does not identify any third-party statement that caused him injury.  In fact, the FAC does not even allege that Ginsberg ever saw any offensive content on Telegram with his own eyes.  At most, the FAC alleges that Ginsberg was harmed by the knowledge that offensive Telegram content exists in the world.  But that attenuated harm cannot be attributed to Apple.

Plaintiffs attempt to manufacture standing by alleging that when Ginsberg bought his iPhone in 2020, he was unaware that Telegram hosted highly offensive third-party content and was therefore injured by the app's mere availability in the App Store.  But this attempt to connect Apple's conduct to Plaintiffs' injuries fails out of the gate because Plaintiffs' FAC *also* alleges it was "well known" and "widely reported" that Telegram hosted offensive content in violation of the Guidelines as far back as 2013.  It is implausible that Ginsberg — a public figure focused on identifying offensive content on social media platforms — would not have been aware of this "well known" fact long before he purchased his iPhone.  Also, CSW has no conceivable standing because it has not made any payment toward the iPhone purchase.

Ginsberg's NIED claim also fails on the merits.  NIED claims are strictly limited, as there is no general duty to avoid causing emotional distress to others.  To plead NIED, the plaintiff must establish an

independent duty imposed by a law or a special relationship (e.g., doctor-patient), or that the defendant expressly assumed a duty to care for the plaintiff's emotional wellbeing.  The FAC comes nowhere close to identifying any such duty.  The NIED claim also fails to allege causation and is barred by the two-year statute of limitations because the claim accrued eight years ago when it allegedly became well known that Telegram users were posting highly offensive content on the app.

Finally, Plaintiffs fail to allege viable claims under the "unfair" or "unlawful" prongs of the UCL. Plaintiffs' "unfair" claim fails because Telegram's alleged violations of the Guidelines were "well known" long before Ginsberg's iPhone purchase, and Ginsberg cannot plausibly disclaim such knowledge.  Further, the FAC concedes that Ginsberg read the Guidelines before he purchased the iPhone, and the Guidelines make clear that Apple retains discretion to decide whether apps will be removed from the App Store. Plaintiffs therefore do not plausibly allege that Apple breached any promise or representation.  Plaintiffs' "unlawful" claim fails because they do not plausibly allege that Apple violated any law, including Penal Code Section 422.6 (which requires a specific intent to harass Plaintiffs that is clearly absent here).

In short, although Plaintiffs have had an opportunity to amend their complaint based on Apple's motion to dismiss their original complaint, which raised all the pleading defects identified in this motion, the FAC still fails to establish standing, fails to state a claim, and is barred by Section 230.  Accordingly, for the reasons set forth more fully below, the Court should dismiss the FAC with prejudice.

## II.    **BACKGROUND**

### A.    **Apple Operates the App Store Where Users Can Download Third-Party Apps Containing Third-Party Content.**

Apple sells iPhones and other electronic devices.  (FAC ¶¶ 10, 19–24.)  In 2008, Apple launched the App Store, a service that allows users to download a broad range of software applications ("apps") onto their Apple devices.  (*Id.* ¶¶ 4, 10, 18; *id.* at Ex. A, at 1.)[1]  The App Store offers for download apps created

---

[1] The excerpt from the App Store Review Guidelines attached as Exhibit A to the FAC is properly considered on a motion to dismiss.  *See, e.g.*, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion

Case No. 5:21-cv-00425-EJD
APPLE'S NOTICE OF MOTION AND MOTION; MEMORANDUM

by "third-party" developers and has become an "ecosystem for millions of developers and more than a billion users." (*Id.* ¶¶ 4, 10, 18; *id.* at Ex. A, at 1.)

The App Store Review Guidelines ("Guidelines") expressly provide guidance to *app developers* (not App Store users or any other consumers) regarding Apple's standards for the safety, technical performance, business models, design, and legal compliance of apps submitted for distribution through the App Store. (*Id.* ¶ 27; *id.* at Ex. A, at 1–2.)  Recognizing that "[a]pps with user-generated content present particular challenges," the Guidelines require that such apps include content moderation mechanisms for filtering objectionable material, reporting offensive content, and blocking abusive users in order "[t]o prevent abuse." (*Id.* ¶ 97; *id.* at Ex. A, at 4–5.)  The Guidelines further warn that "[a]pps with user-generated content or services that end up being used primarily for pornographic content, Chatroulette-style experiences, objectification of real people (e.g. "hot-or-not" voting), making physical threats, or bullying do not belong on the App Store and may be removed without notice." (*Id.* ¶ 97; *id.* at Ex. A, at 5.)

The FAC alleges that Apple retains "*full managerial discretion* to remove apps that violate" its Guidelines, (*id.* ¶ 98 (emphasis added)), as well as full discretion to change or update the Guidelines "at any time," (*see id.* at Ex. A, at 1–2 (Introduction) ("This is a living document; new apps presenting new questions may result in new rules at any time.")).  Moreover, the Apple Media Services Terms and Conditions—which, unlike the Guidelines, are directed to *consumers*—clearly warn users that "Apple is not responsible or liable for third party materials included within or linked from [App Store apps]."[2]

---

to dismiss into a motion for summary judgment."); *Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019) ("When evaluating the sufficiency of a pleading under Fed. R. Civ. P. 12(b)(6), we review only the allegations in the complaint and any attachments or documents incorporated by reference.").

[2] Apple Media Services Terms and Conditions § L, *available at* https://www.apple.com/legal/internet-services/itunes/us/terms.html.  These Terms are incorporated by reference into the FAC and can therefore be considered in this motion. *See, e.g.*, FAC ¶ 4 (alleging that Ginsberg "knew that Apple had terms of service and policies related to the use of the iPhone and to applications available through the App Store"); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (noting that in evaluating a Rule 12 motion, courts are entitled to consider "evidence on which the complaint 'necessarily relies,'" even if the evidence

4

**B.   Telegram Is a Third-Party Text Messaging App Available in the App Store.**

Telegram is a popular mobile and desktop text-messaging app.  (FAC ¶¶ 32, 36.)  Apple did not create or develop Telegram; rather, Telegram is a third-party app that has been available for download in the App Store since August 14, 2013.  (*Id.* ¶¶ 29–31, 34–35.)  Telegram has over 500 million active users, yet as of December 2020 Telegram had only been downloaded from the App Store "an estimated 6 million times worldwide."  (*Id.* ¶¶ 31, 74.)  This is because the vast majority of Telegram users access Telegram outside of the App Store, including via Telegram's web version and the Android app store. (*Id.* ¶ 35; *id.* at Ex. B, at 3 (noting that CSW requested that Samsung remove Telegram "from its Android app store").)

The FAC alleges that "[s]ince its launch in 2013, Telegram has been the subject of derision for facilitating voices of violence and extremism."  (*Id.* ¶ 44.)  According to the FAC, racist and anti-Semitic groups have used Telegram to post content "threatening people of color and Jewish people" and to "facilitate and carry out [their] terrorist activity."  (*Id.* ¶¶ 52, 58, 67.)  The FAC includes alleged examples of such content purportedly posted by Telegram users in the app.  (*Id.* ¶¶ 59–73.)  The FAC also alleges that Telegram's purported violations of Apple's Guidelines are "well known and have been widely reported by international media outlets since 2013," and that Apple "has not removed Telegram from the App Store nor undertaken any action to compel" Telegram's compliance.  (*Id.* ¶¶ 102–03.)  The FAC, however, does not allege that Telegram is used primarily to post hateful content, or that most (or even the majority) of Telegram's more than 500 million users use the app for this purpose; does not allege that Telegram lacks the content moderation mechanisms the Guidelines require for apps that contain user-generated content; does not allege that its examples of offensive user-generated content still remain accessible in Telegram;

---

is not physically attached to the complaint); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint."); *supra*, at fn. 1 (citing cases applying incorporation by reference doctrine).

Case No. 5:21-cv-00425-EJD
APPLE'S NOTICE OF MOTION AND MOTION; MEMORANDUM

and does not allege that Apple played any role whatsoever in creating or developing any of the racist, anti-Semitic, or violent user-generated content allegedly posted within Telegram.

### C.   Ginsberg Bought an iPhone After It Was Widely Known That Third Parties Were Using Telegram to Share Offensive User-Generated Content.

Plaintiff Marc Ginsberg is a public figure who served as "the first Jewish ambassador to an Arab country from the U.S." (FAC ¶¶ 5, 7.) Ginsberg is also the President of Plaintiff CSW, a not-for-profit organization whose "mission is to accelerate the de-platforming of extremist and hate incitement from social media platforms." (*Id.* at Ex. B.) As alleged in the FAC, Ginsberg has been the victim of anti-Semitism going back decades, including two assassination attempts due to his religious beliefs. (*Id.* ¶ 7.)

In early 2020—seven years after Telegram allegedly became "the subject of derision for facilitating voices of violence and extremism," (*id.* ¶ 44)—Ginsberg purchased an Apple iPhone XR "for personal and professional use," (*id.* ¶ 4.) When Ginsberg purchased his iPhone, it was "well known" and "widely reported" that Telegram was supposedly violating the Guidelines. (*Id.* ¶¶ 4, 102.) Despite alleging that such violations were "well known" *before* Ginsberg made his iPhone purchase, the FAC paradoxically alleges that Ginsberg "premised his purchase and use" of the iPhone "on an expectation that [Apple] would enforce [its] app guidelines," "relied on Apple to comply with its own policies and terms of service when deciding to purchase his iPhone," and was "unaware that Apple was allowing Telegram to be present on the App Store despite not complying with Apples [sic] terms of service and policies." (*Id.* ¶¶ 4, 106–07.) Naturally, the FAC does not allege (nor can it truthfully allege) that Ginsberg would not have purchased the iPhone had he known that Telegram contained offensive user-generated content or that the app supposedly violated the Guidelines.

Also conspicuously absent from the FAC is any allegation that Ginsberg downloaded Telegram from the App Store, or that he otherwise viewed anti-Semitic or other offensive Telegram content on his iPhone. In fact, the FAC does not allege that Ginsberg *ever* downloaded, viewed, or used Telegram *in any manner*, either on his iPhone or elsewhere. Rather, without articulating any connection to Ginsberg's use of his iPhone, the FAC alleges generally that Ginsberg has been "forced to live in apprehension of religiously motivated violence being perpetrated against him" as a result of anti-Semitic Telegram posts

Case No. 5:21-cv-00425-EJD
APPLE'S NOTICE OF MOTION AND MOTION; MEMORANDUM

that "encourage violence against people of the Jewish faith." (*Id.* ¶¶ 62, 86.) And despite alleging that Ginsberg suffered "substantial emotional harm including depression and anxiety," (*id.* ¶ 87), the FAC does not identify any particular Telegram post that Ginsberg actually viewed that caused him emotional distress.

The FAC also does not allege any injury or harm actually suffered by Plaintiff CSW as a result of anything Apple did or did not do. The FAC merely alleges that CSW is responsible for reimbursing Ginsberg for the iPhone he purchased last year but has never actually reimbursed him. (*Id.* ¶ 14.)

### D.    Plaintiffs Seek to Hold Apple Liable for User-Generated Content Posted in Telegram.

Plaintiffs filed this action against Apple on January 17, 2021. In response to Apple's motion to dismiss the original complaint, Plaintiffs filed their FAC on May 28, 2021. The FAC "seek[s] damages and injunctive relief against Defendant Apple[] Inc. for allowing Telegram to be made available through Apple's App Store despite Apple's knowledge that Telegram was being used to intimidate, threaten, and coerce members of the public." (FAC ¶ 1.) On this basis, Plaintiffs assert claims against Apple for (1) negligent infliction of emotional distress; (2) violation of the unfair prong of the Unfair Competition Law, California Business and Professions Code 17200, *et seq.* (the "UCL"), based on the alleged deprivation of a "key benefit of" Ginsberg's purchase and use of his iPhone; and (3) violation of the unlawful prong of the UCL, based on Apple's alleged aiding and abetting of Telegram users' purported violations of California's hate crime statute, Penal Code § 422.6. (*Id.* ¶¶ 75–124.) Plaintiffs seek compensatory damages, as well as an injunction "prohibiting the availability of Telegram through the App Store unless Telegram complies with Apple's policies and guidelines." (*Id.* at Prayer for Relief.)

## III.   ARGUMENT

### A.    Section 230 Bars Plaintiffs' Claims Because Plaintiffs Seek to Hold Apple Liable As the Publisher of Third-Party Content Within a Third-Party App.

Plaintiffs' FAC must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it attempts to extend liability to Apple, an interactive computer service provider, for content Apple did not create or develop, posted within an app that Apple, again, did not create or develop—claims that Section 230 categorically bars under well-established precedent. "The majority of federal circuits have interpreted the CDA [i.e., Section 230] to establish broad federal immunity to any cause of action that would

Case No. 5:21-cv-00425-EJD
APPLE'S NOTICE OF MOTION AND MOTION; MEMORANDUM

make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (citation and internal quotation marks omitted). And this "quite robust" immunity "extends to *all* claims stemming from an interactive computer service provider's publication of content created by third parties." *Coffee v. Google, LLC*, No. 20-3901, 2021 WL 493387, at *4 (N.D. Cal. Feb. 10, 2021) (granting motion to dismiss under Rule 12(b)(6)) (citation omitted).

Under well-settled Ninth Circuit precedent, Section 230 serves as a statutory bar to all causes of action, and it is appropriately applied at the motion to dismiss stage where the complaint confirms that the claims fall within Section 230's broad reach. *See Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020) (affirming Rule 12(b)(6) dismissal on the basis of Section 230 and holding that "[w]hen a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed"); *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016) ("Kimzey's effort to circumvent the CDA's protections through 'creative' pleading fails, and the district court did not err in granting Yelp's motion to dismiss."); *see also PC Drivers Headquarters, LP v. Malwarebytes Inc.*, 371 F.Supp.3d 652, 659 (N.D. Cal. 2019) (Davila, J.) (collecting cases).  Here, the allegations in the FAC confirm that Plaintiffs' claims are barred by Section 230.

### 1.    Under Section 230(c)(1), Apple Cannot Be Treated As A Publisher Of Third-Party Content.

Section 230(c)(1) of the CDA "protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo! Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009) (footnote omitted); *see* 47 U.S.C. § 230(c)(1) (providing that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider").  Every part of this standard is satisfied in this case.

To start, Apple is a "provider . . . of an interactive computer service"—the App Store.  The CDA defines an "interactive computer service" as, in relevant part, "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47

Case No. 5:21-cv-00425-EJD
APPLE'S NOTICE OF MOTION AND MOTION; MEMORANDUM

U.S.C. § 230(f)(2).   The Ninth Circuit applies this definition "expansive[ly]."   *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003).  Based on both plain language and precedent, the App Store easily falls within this definition.  The FAC alleges that the App Store is an "ecosystem for millions of developers and more than a billion users," which offers software applications, created by third-party developers, for download by third-party users on Apple's Internet-based products.  (FAC ¶¶ 4, 10, 18; *id.* at Ex. A, at 1).  These allegations easily establish that the App Store is a service or system that allows "multiple users" to access "a computer server."  47 U.S.C. § 230(f)(2).

Courts in this district routinely find that app distribution channels like the App Store are "interactive computer service[s]," with one court affirming that "app stores are ***paradigmatic*** interactive computer services, as they are websites from which customers can locate and download apps developed, written, and branded by third parties."  *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 981, 983 (N.D. Cal. 2015) (finding Google Play and Amazon app stores interactive service providers) (emphasis added); *see also Coffee*, 2021 WL 493387, at *5 (same, for Google Play app store); *Evans v. Hewlett-Packard Co.*, No. 13-2477, 2013 WL 5594717, at *1, 3–4 (N.D. Cal. Oct. 10, 2013) (same, for Hewlett-Packard's "App Catalogue," which offered software apps for download).

Section 230(c)(1) protects interactive computer services from liability in all but the narrowest circumstances—such as when the providers, acting as information content providers, create or develop the unlawful content themselves.  *See* 47 U.S.C. § 230(f)(3) (defining "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service"); *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008) (holding that "a website operator who edits [user-created content] in a manner that contributes to the alleged illegality . . . is directly involved in the alleged illegality and thus not immune" under section 230).  Plaintiffs' FAC contains no allegations suggesting that Apple is an information content provider: though the FAC claims that Telegram contains offensive and allegedly criminal speech, it does not allege that Apple created or developed

9

Telegram or any of the allegedly harmful speech Telegram hosts.[3]  The FAC instead attributes this content

solely to Telegram *users—i.e.*, to third parties on a third-party app.  (FAC ¶¶ 52, 58–73.)

Indeed, the allegations in the FAC make clear that Plaintiffs "seek[] to treat" Apple, an interactive

computer service provider, as the publisher of third-party content—thereby running right into the Section

230 bar.  *Barnes*, 570 F.3d at 1100–01; *see* 47 U.S.C. § 230(c)(1).  Plaintiffs allege that "[b]y continuing

to host Telegram on the Apple App Store," Apple has "facilitate[d] religious threats" against Ginsberg and

his family, failed to enforce the Guidelines that allegedly induced Ginsberg to purchase an iPhone, and

aided and abetted criminal acts by third-party users of the app.  (FAC ¶¶ 89, 103, 106, 108–10, 122.)  These

claims thus arise from one central allegation: that Apple has not removed Telegram—and by extension,

the offensive user-generated content posted in the app—from the App Store.  But, under well-settled Ninth

Circuit precedent, "deciding whether to publish or to withdraw from publication third-party content" is

precisely what it means to be a publisher for Section 230 purposes.  *Barnes*, 570 F.3d at 1102.  A decision

*not* to remove third-party content is "perforce immune under section 230."  *Roommates.Com*, 521 F.3d at

1170–71; *see also Barnes*, 570 F.3d at 1102 (holding that when "the duty" allegedly violated "derives from

the defendant's status or conduct as a 'publisher or speaker' . . . , section 230(c)(1) precludes liability").

This Court already has recognized as much in dismissing without leave to amend an attempt to hold

Facebook responsible for "decid[ing] not to remove" third-party content on its website, because "[l]iability

based on that sort of vicarious responsibility . . . is exactly what § 230(c) seeks to avoid."  *Caraccioli v.

Facebook, Inc.*, 167 F. Supp. 3d 1056, 1066 (N.D. Cal. 2016) (Davila, J.), *aff'd* 700 Fed. App'x 588, 590

(9th Cir. 2017).

Plaintiffs cannot plead around Section 230 by alleging that Apple "knew or should have known that

their App Store was being used to download the Telegram app for terroristic purposes."  (FAC ¶ 82.)

Courts have made clear that actual or constructive knowledge of third-party misconduct is irrelevant under

---

[3] The only speech attributable to Apple is the Guidelines.  But having guidelines related to content

moderation does not transform Apple into an "information content provider" outside of Section 230(c)(1)'s

coverage.  *See Bennett v. Google, LLC*, 882 F.3d 1163, 1167–68 (D.C. Cir. 2018) (finding that Google's

Blogger Content Policy did not transform Google into an "information content provider").

Case No. 5:21-cv-00425-EJD
APPLE'S NOTICE OF MOTION AND MOTION; MEMORANDUM

Section 230 when a provider simply offers "neutral tools" that can be used "for proper or improper purposes" to users who "ultimately determine what content to post," as is the case with apps in the App Store.  *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1197 (N.D. Cal. 2009) (citations omitted); *id.* at 1198, 1202 (noting that "the provision of neutral tools generally will not affect the availability of CDA immunity even if a service provider *knows* that third parties are using such tools to create illegal content," and dismissing complaint without leave to amend) (internal quotation marks omitted); *see also, e.g.*, *Zeran v. America Online, Inc.*, 129 F.3d 327, 328, 333 (4th Cir. 1997) (holding that providers are shielded from liability even when they receive notification of objectionable content on their websites and fail to remove it, and affirming entry of judgment on pleadings); *Dyroff v. Ultimate Software Group, Inc.*, No. 17-5359, 2017 WL 5665670, at *8, *10–11 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934 F.3d 1093 (9th Cir. 2019) (holding that "neutral tools" that allowed users to communicate did not transform software company into an "information content provider, "even if the tools were used to facilitate unlawful activities on the site," and dismissing claims).  Accordingly, Plaintiffs cannot seek to hold Apple liable for third-party content in third-party apps "merely by alleging that [Apple] should have known that the availability of certain tools might facilitate the posting of improper content."  *Goddard*, 640 F. Supp. 2d at 1198.

Because the FAC attempts to attach liability to Apple for its publishing decisions, Section 230(c)(1) bars all of Plaintiffs' claims.  Courts in this District have dismissed near-identical efforts to hold app stores or other interactive service providers liable for not removing purportedly harmful third-party content, and the Ninth Circuit has affirmed this rule.  *See, e.g.*, *Dyroff*, 934 F.3d at 1095, 1101 (affirming dismissal of, *inter alia*, negligence claim against social networking website for failing to remove user posts facilitating the sale of illegal drugs on Section 230 immunity grounds); *Coffee*, 2021 WL 493387, at *2, 5–8 (dismissing, *inter alia*, UCL claim against Google for hosting video game apps containing allegedly illegal "loot box" gambling features on the Google Play store); *Caraccioli*, 167 F.Supp.3d at 1061, 1066–67 (dismissing without leave to amend, *inter alia*, NIED and UCL claims "because Plaintiff's claims against Facebook [were] barred as a matter of law by § 230(c)" and "allowing for their amendment would be futile"); *Free Kick Master*, 140 F. Supp. 3d at 980, 983 (dismissing with prejudice, *inter alia*, UCL claim against Google and Amazon for providing an app for download on their respective app stores that allegedly

Case No. 5:21-cv-00425-EJD
APPLE'S NOTICE OF MOTION AND MOTION; MEMORANDUM

infringed plaintiff's trademark).[4]

### 2. Under Section 230(c)(2), Apple Also Cannot Be Held Liable For Its App Store Content Moderation Decisions.

Under Section 230(c)(2), an interactive computer service provider cannot be liable for "*any* action voluntarily taken in good faith to restrict access to or availability of material that the provider . . . considers to be obscene . . . or otherwise objectionable." *Barnes*, 570 F.3d at 1105 (quoting 47 U.S.C. § 230(c)(2)) (emphasis added). By extension, "good faith efforts to remove objectionable content cannot create liability for service providers' failure to remove all such content." *Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 890 (N.D. Cal. 2017). In this way, Section 230(c)(2) "allows [interactive computer services] to perform some editing on user-generated content without thereby becoming liable for all defamatory or otherwise unlawful messages that they didn't edit or delete.'" *Id.* (quoting *Roommates.Com*, 521 F.3d at 1174).

The FAC ignores Section 230(c)(2) by seeking to hold Apple liable for its App Store content moderation decisions. Plaintiffs do not allege a single fact to suggest that Apple's efforts to moderate content are somehow undertaken in bad faith. Moreover, they concede that Apple has "full managerial discretion" under the Guidelines to remove—or not remove—from the App Store apps with offensive user-generated content. FAC ¶ 98. Still, Plaintiffs claim that Apple is liable under state law for deciding not to remove Telegram for its users' alleged violations of the Guidelines. (FAC ¶¶ 83, 91, 103, 106, 108-10, 122.) Interactive computer service providers like Apple, however, do not forfeit Section 230's safeguards merely by having content moderation policies and applying these policies as they see fit. *See Pennie*, 281 F. Supp. 3d at 890; *Green v. Am. Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003) ("Section 230(c)(2) . . .

---

[4] Plaintiffs' claims are also easily distinguishable from *Taylor, et al. v. Apple, Inc.*, No. 3:20-cv-03906-RS, ECF No. 46 (March 19, 2021), where Judge Seeborg held that Section 230 may not bar claims "seeking to hold Apple liable for selling allegedly illegal gaming *devices*, not for publishing or speaking information." *Id.* at 6 (emphasis added). Unlike *Taylor*, the gravamen of Plaintiffs' FAC here—and the alleged cause of Ginsberg's emotional distress—are the words and images posted by third parties, on a third-party app, available in the App Store. Under Section 230, Apple cannot be held liable for that third-party speech.

Case No. 5:21-cv-00425-EJD
APPLE'S NOTICE OF MOTION AND MOTION; MEMORANDUM

1    allows AOL to establish standards of decency without risking liability for doing so.").  Indeed, it would

2    make no sense for Section 230 to protect an interactive computer service from liability where it takes no

3    steps to filter offensive, user-generated content, but to expose a service to liability if it tries to take these

4    steps.

5            Indeed, even if the FAC plausibly alleged that Apple strayed from its own Guidelines (which it

6    does not), Section 230(c)(2) would *still* preclude liability as a matter of law.  Section 230 does not "mandate

7    perfect enforcement of a platform's content policies," because "one purpose of Section 230 is to provide

8    interactive computer services with immunity for removing 'some—but not all—offensive material from

9    their websites.'"  *Domen v. Vimeo, Inc.*, 991 F.3d 66, 73 (2d Cir. 2021) (quoting *Bennett v. Google, LLC*,

10   882 F.3d 1163, 1166 (D.C. Cir. 2018)); *see also Pennie*, 281 F. Supp. 3d at 884, 890 (finding claims

11   attempting to hold social networking websites liable for allowing back "reconstitute[d]" terrorist

12   organization accounts that the websites had initially taken down were barred by Section 230(c)(2)).

13   Holding otherwise would undermine "the fundamental purpose of Section 230(c)(2)," which is to allow

14   providers "the discretion to identify and remove what they consider objectionable content from their

15   platforms without incurring liability for each decision."  *Domen*, 991 F.3d at 68.

16           "Because the CDA provides internet service providers with immunity from state-law claims based

17   on information originating with a third-party user of the service," each of Plaintiffs' causes of action is

18   barred by Section 230 and should be dismissed with prejudice.  *See Free Kick Master*, 140 F. Supp. 3d at

19   983, 986 (citation and internal quotation marks omitted).

20           **B.      The FAC Must Be Dismissed for Lack of Standing.**

21           Even if Plaintiffs' claims did not run afoul of Section 230 (which they do), the FAC must be

22   dismissed because Plaintiffs lack Article III and statutory standing to seek relief from Apple.

23           **1.      Ginsberg Lacks Article III Standing to Pursue His NIED Claim.[5]**

24           "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold

25   requirement imposed by Article III of the Constitution by alleging an actual case or controversy."  *City of*

26   _____

27   [5] The FAC does not expressly limit the NIED claim to Ginsberg, but the allegations make clear that

28   Plaintiffs only seek to recover for *Ginsberg's* alleged emotional distress.  (FAC ¶¶ 89–92.)  Obviously, an

                                                    13

*Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing, plaintiffs bear the burden of proving that they are "the proper party to bring the matter to the court for adjudication."  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010) (affirming dismissal for lack of standing); *see also Taleshpour v. Apple Inc.*, No. 20-3122, 2021 WL 1197494, at *2 (N.D. Cal. Mar. 30, 2021) (Davila, J.) ("Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing the existence of Article III standing and, at the pleading stage, 'must clearly allege facts demonstrating each element.'") (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016)).

Specifically, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).  "To establish a traceable injury, there must be 'a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'"  *Taleshpour*, 2021 WL 1197494, at *2 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  Ginsberg's alleged emotional harm arising from his NIED claim fails to establish Article III standing, as it cannot be traced to Apple or redressed by this Court.

Ginsberg asserts that Apple's allegedly negligent decision not to remove Telegram from the App Store resulted in his "fear of religious violence," which "has caused him substantial emotional harm." (FAC ¶¶ 87, 91.)  However, Ginsberg's fear of religious violence arises not from any conduct by Apple, but from his alleged knowledge that some Telegram users post anti-Semitic content in the app.  (*Id.* ¶¶ 44, 82, 102.)  Even with an opportunity to amend, Plaintiffs still do not allege that Apple had any involvement in creating or developing the Telegram app or the content on it; nor do they allege that Ginsberg ever used

---

organizational plaintiff like CSW cannot suffer such harm.  Thus, even if CSW attempted to assert an NIED claim, it would fail for lack of Article III standing.

14

his iPhone to view Telegram or any of its user-generated content, or that he ever even downloaded Telegram—whether on his iPhone or elsewhere.  At most, Plaintiffs generally allege that the mere existence of offensive user-generated content on Telegram caused Ginsberg emotional distress, without pointing to any particular statement by any third party that caused him any particular injury.  This alleged injury is not "fairly traceable" to anything Apple did, let alone anything unlawful.  *Friends of the Earth*, 528 U.S. at 180.[6]

The injunctive relief sought by Ginsberg further demonstrates the absence of any causal connection between Apple's conduct and Ginsberg's alleged emotional distress.  The user-generated content on Telegram exists in the digital world, with or without the App Store: as the FAC concedes, Telegram is available to anyone with an Android phone or even a basic Internet connection.  (FAC ¶ 35; *id.* at Ex. B, at 3 (Telegram can be accessed on the Android app store and via a "web version")).  Moreover, given that Telegram has over 500 million users but has only been downloaded from the App Store 6 million times, the vast majority of Telegram users are not accessing the app through Apple's App Store.  (*Id.* ¶¶ 31, 74.) Thus, Ginsberg's emotional harm is not "fairly traceable" to Apple's decision to include Telegram on the App Store.  Nor would the relief Plaintiffs seek—an order requiring Apple to remove Telegram from the App Store—redress Ginsberg's emotional harm because third parties who post offensive speech can easily continue accessing Telegram elsewhere.

> **2.    Plaintiffs Lack Article III and Statutory Standing to Pursue Their UCL Claims.**

Plaintiffs cannot pursue their UCL claims unless they can establish both Article III standing—as defined above—and statutory standing.  Statutory standing under the UCL requires a plaintiff to "establish that they (1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition."

---

[6] The FAC's new allegation that "Ginsberg is aware that Telegram is used to incite violence and was terrified for his safety during the Capitol riots of January, 2021" (FAC ¶ 85), further highlights the absence of a connection between any alleged harm Ginsberg suffered and any conduct on the part of Apple.  He concedes that his emotional distress was caused by the Capitol riots but alleges no plausible connection between any breach of any duty by Apple and the violence that occurred in Washington, DC on January 6.

Case No. 5:21-cv-00425-EJD
APPLE'S NOTICE OF MOTION AND MOTION; MEMORANDUM

*Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) (citing Cal. Bus. & Prof. Code § 17204).  "[T]he only difference in defining 'injury-in-fact' between the UCL and Article III is that the former "must be an economic injury."  *McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1051 (C.D. Cal. 2014) (citation, internal quotation marks, and emphasis omitted).  Here, Plaintiffs' UCL claims must be dismissed because the FAC fails to establish the requisite injury under either federal or state law.

In connection with Plaintiffs' UCL "unfair" claim, the FAC alleges that Apple's "failure to enforce their own guidelines against Telegram has caused Ambassador Ginsberg and CSW to suffer economic loss by being deprived of a key benefit of the purchase and use" of his iPhone.  (FAC ¶ 110.)  This conclusory allegation does not pass muster for three reasons.

First, Plaintiffs' alleged deprivation of a "key benefit" of Ginsberg's iPhone does not constitute an actual loss of money or property of any kind: Plaintiffs do not allege that Ginsberg would not have purchased his iPhone had he known that Telegram would be available for download in the App Store; nor do they allege that Ginsberg would have (or could have) paid less for the iPhone had he known this information.  Rather, Plaintiffs allege vaguely that "[p]art of the cost associated with Plaintiffs' transaction was related to the benefits promised under Defendants' terms of service and policies" and that "they have suffered an actual loss of money in not receiving benefits Plaintiffs paid for."  (*Id.* ¶ 111.)  These allegations are insufficient to satisfy the UCL standing requirement.  Plaintiffs' UCL claims must be dismissed on this basis alone.

Second, Plaintiffs have not alleged the requisite injury in fact "*as to themselves*."  *Birdsong*, 590 F.3d at 960 (holding that plaintiffs had failed to establish "concrete and particularized" injury "*as to themselves*" when they "d[id] not claim that they suffered or imminently w[ould] suffer hearing loss from their iPod use," or "even . . . that they used their iPods in a way that exposed them to the alleged risk of hearing loss").  Although Plaintiffs allege that Apple's supposed failure to enforce the Guidelines against Telegram "deprived" Ginsberg of a "key benefit" of his iPhone, the FAC does not allege that Ginsberg downloaded Telegram on his iPhone, or even that he used the App Store or the Telegram app *at all*.  The UCL claim must therefore be dismissed for lack of constitutional and statutory standing.

16

Third, Ginsberg has not plausibly alleged that he was "deprived of an agreed-upon benefit"—*i.e.*, a benefit that Apple represented but did not deliver—which precludes Article III and statutory standing. *McGee v. S-L Snacks National*, 982 F.3d 700, 705–06 (9th Cir. 2020) (quoting *Birdsong*, 590 F.3d at 961). Rather, the FAC establishes that when Ginsberg purchased his iPhone in 2020, he got exactly what he paid for.  By Plaintiffs' own admission, it was supposedly public knowledge *before* 2020 that Telegram hosted offensive speech, and (according to Ginsberg) it was also broadly reported that Telegram was supposedly not in compliance with the Guidelines.  The FAC's new allegation that Ginsberg was somehow "unaware" of this alleged public knowledge when he purchased his iPhone (FAC ¶ 107)—which was clearly added to the FAC in an attempt to save it—is entirely implausible, particularly given that Ginsberg is the president of an organization whose mission it is to address precisely this issue.  (*Id.* at Ex. B at 3.)

Additionally, because Ginsberg alleges that he was aware of and relied on the Guidelines in advance of his purchase, he was necessarily on notice that the Guidelines explain to app developers that Apple "*may* . . . remove[]*" apps "*primarily*" used for offensive user-generated content, (FAC ¶¶ 4, 97, 107–09; *id.* at Ex. A, at 1, 5 (emphasis added)); that Apple retains "full managerial discretion" in deciding whether or not to remove apps from the App Store, (*id.* ¶ 98); and that the Guidelines themselves could change "at any time," (*id.* at Ex. A, at 2.  And because Ginsberg "knew" about Apple's "terms of service and policies related to [consumers'] use of the iPhone" "[a]s part of his purchase of the iPhone," he was also necessarily on notice that Apple expressly disclaims responsibility "for third party materials included within or linked from [App Store apps]."  (*Id.* ¶ 4; *supra*, at fn. 2.)

Having pled all of this, it is implausible—indeed impossible—for Plaintiffs to establish that Apple's failure to remove Telegram from the App Store (or even Telegram's alleged failure to comply with the Guidelines) somehow undermined an "agreed-upon benefit" of the iPhone.  *Birdsong*, 590 F.3d at 961–62 (affirming dismissal of complaint for lack of statutory standing because "[t]he plaintiffs d[id] not allege that Apple made any representations that iPod users could safely listen to music at high volumes for extended periods of time," and in fact "admit[ted] that Apple provided a warning against listening to music at loud volumes"); (*see* FAC ¶ 106 ("A portion of the cost of the iPhone was related to the benefits provided under the terms of service and policies of Apple."); *id.* ¶ 111 ("Part of the cost associated with Plaintiffs'

transaction was related to the benefits promised under Defendant's terms of service and policies.")).  To the contrary, Ginsberg must have known that Telegram was supposedly violating the Guidelines *before* he purchased the iPhone, and that Apple made no guarantee that it would remove all apps that hosted offending content.  (FAC ¶¶ 97, 100, 102.)  Moreover, Apple expressly reserved the right to change the Guidelines at any time, precluding any plausible allegation that Ginsberg relied on Apple's compliance with those Guidelines in purchasing his iPhone.  (*Id.* at Ex. A, at 2 ("This is a living document; new apps presenting new questions may result in new rules at any time.").)

In short, "[t]he [P]laintiffs' alleged injury in fact is premised on the loss of [an alleged] benefit that was not part of the bargain to begin with."  *Birdsong*, 590 F.3d at 961.  "There can be no serious dispute that a purchaser of a product who receives the benefit of his bargain has not suffered Article III injury-in-fact traceable to the defendant's conduct."  *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 972 (C.D. Cal. 2014) (dismissing complaint for failure to meet the standing requirements of Article III or the UCL).  For this reason, the allegations in the FAC foreclose any Article III or statutory standing based on Ginsberg's purchase of his iPhone.[7]

Finally, to the extent Plaintiffs' alleged harm associated with their UCL "unlawful" claim stems from Ginsberg's alleged loss of a "key benefit" of his iPhone (*see* FAC ¶ 123), it fails for the same reason as the UCL "unfair" claim.  In short, all roads lead to dismissal for lack of standing.

### C.  The FAC Must Be Dismissed for Failure to State a Claim.

Separate and apart from the statutory and constitutional bars discussed above, the FAC must be dismissed under Rule 12(b)(6) for failure to plead a viable claim.  Dismissal under Federal Rule of Civil Procedure 12(b)(6) "is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (citation and internal quotation marks omitted).  Dismissal under Rule 12(b)(6) is also proper where the plaintiffs have failed to allege a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Allegations indicating the "mere *possibility* of misconduct" fall short of meeting this

---

[7] The FAC does not allege any injury incurred by CSW.  Ginsberg is the one who paid for the iPhone; CSW was supposed to reimburse him, but has not done so.  (FAC ¶ 14.)  Therefore, CSW has no standing.

Case No. 5:21-cv-00425-EJD
APPLE'S NOTICE OF MOTION AND MOTION; MEMORANDUM

plausibility standard.  *Id.* (emphasis added).  Rather, the plaintiff must "allege more by way of factual content to 'nudg[e]' his claim" of unlawful action "across the line from conceivable to plausible."  *Id.* at 683 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Each of Plaintiffs' causes of action is subject to dismissal under this standard.

### 1.     Ginsberg Fails to State a Claim for Negligent Infliction of Emotional Distress.

Ginsberg has not (and cannot) allege facts supporting a viable NIED claim.  Courts have recognized negligence claims seeking purely emotional distress damages in very limited circumstances, none of which apply here.  To state a claim for negligent infliction of emotional distress, a plaintiff must allege all the elements of a negligence claim, including the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury.  *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993) ("[T]here is no independent tort of negligent infliction of emotional distress.  The tort is negligence, a cause of action in which a duty to the plaintiff is an essential element.") (citation omitted); *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992) ("We have repeatedly recognized that '[t]he negligent causing of emotional distress is not an independent tort, but the tort of negligence."); *McIntyre v. The Colonies-Pac., LLC*, 228 Cal. App. 4th 664, 671 (2014) (identifying elements of negligence claim).  Significantly, however, a plaintiff asserting an NIED claim must allege *more* than a general duty of care.  Rather, because "there is no duty to avoid negligently causing emotional distress to another[,] . . . unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, *recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty.*"  *Gu v. BMW of N. Am., LLC*, 132 Cal. App. 4th 195, 204 (2005) (citations and internal quotation marks omitted) (emphasis added).  Ginsberg's claim must be dismissed because he fails to plead any such duty.

The California Supreme Court has only recognized two types of NIED cases: "bystander" cases and "direct victim" cases.  "Bystander" cases involve emotional distress caused when a plaintiff observes the negligently inflicted injury of a third person.  *Thing v. La Chusa*, 48 Cal. 3d 644, 667–68 (1989).  This is not a "bystander" case because neither Plaintiff purports to have been a bystander to another victim's injuries.  "Direct victim" cases involve a defendant breaching a duty "assumed by the defendant or imposed

on the defendant as a matter of law, or that arises out of a relationship between the two." *Burgess*, 2 Cal. 4th at 1073.  Importantly, the California Supreme Court has allowed "direct victim" plaintiffs to recover *strictly* emotional distress damages—untethered to physical or property harm—in very limited circumstances not present here. *See Gu*, 132 Cal. App. 4th at 207 ("Valid claims for negligent infliction of emotional distress have been found where the defendant breached the duty of care that arises in the physician-patient relationship, as well as in the psychotherapist-patient relationship, and in the relationship between a mortuary and the close relatives of the decedent for whose benefit the mortuary was to provide funeral services.") (citations omitted); *Ess v. Eskaton Properties, Inc.*, 97 Cal. App. 4th 120, 127 (2002) (similar).

Even with an opportunity to amend, Ginsberg has failed to state a "direct victim" negligence claim for emotional distress damages because he fails to identify a recognized duty, alleging only generally that "[b]ecause [he] purchased Apple's iPhone, Apple owes a duty of reasonable care to ensure that their services are not used as a means to inflict religious and racial intimidation." (FAC ¶ 76.)  But the California Supreme Court has expressly rejected the existence of a general duty of reasonable care to prevent emotional distress. *See Potter*, 6 Cal. 4th at 984 ("[T]here is no duty to avoid negligently causing emotional distress to another, and . . . damages for emotional distress are recoverable only if the defendant has breached some other duty to the plaintiff.").  And the Ninth Circuit has expressly held that interactive computer service providers—like Apple here—do not owe such duties to their users, noting that "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content." *Dyroff*, 934 F.3d at 1101.  Accordingly, Plaintiffs' NIED claim should be dismissed as a matter of law for failure to sufficiently plead a duty. *See Ess*, 97 Cal. App. 4th at 126 (noting that the "duty issue" for an NIED claim "is a question of law"); *Carter v. Rasier-CA, LLC*, No. 17-3, 2017 WL 4098858, at *5 (N.D. Cal. Sept. 15, 2017), *aff'd*, 724 F. App'x 586 (9th Cir. 2018) (dismissing negligent infliction of emotional distress claim where plaintiff did "not allege sufficient facts to show that Defendants owed Plaintiff a duty of care or breached that duty"); *Clark v. Cty. of Tulare*, 755 F. Supp. 2d 1075, 1092 (E.D. Cal. 2010) (concluding no duty of care existed as a matter of law upon finding no special relationship between plaintiff and defendant).

Case No. 5:21-cv-00425-EJD
APPLE'S NOTICE OF MOTION AND MOTION; MEMORANDUM

In addition to failing to allege the existence of a duty, Ginsberg's negligence claim also fails because the FAC does not allege that Apple *caused* Ginsberg's emotional harm.  *See Union Pac. R.R. Co. v. Ameron Pole Prods. LLC*, 43 Cal. App. 5th 974, 980 (2019) ("In a negligence action, the plaintiff must show the defendant's act or omission (breach of duty) was a cause of the plaintiff's injury.") (citation omitted).  "To prove causation, the plaintiff must show: (1) that the defendant's breach of duty was a cause in fact of his or her injury; and (2) that the defendant's breach was the proximate, or legal, cause of the injury."  *Id.*  In California, "a defendant's conduct is a cause [in fact] of a plaintiff's injury if: (1) the plaintiff would not have suffered the injury but for the defendant's conduct, or (2) the defendant's conduct was one of multiple causes sufficient to cause the alleged harm."  *Id.* at 981.  Ultimately, to establish causation, a plaintiff must show a "substantial link or nexus" between the defendant's act or omission and the plaintiff's injury.  *Id.*

Ginsberg does not plead any "link or nexus" between Apple's conduct and his emotional harm, let alone a substantial one.  The FAC alleges that Ginsberg purchased an iPhone, (FAC ¶ 4), but does not allege that he viewed offensive user-generated Telegram content on his iPhone, that he ever downloaded Telegram from the App Store, or that he ever otherwise accessed the app on his iPhone.  And the FAC concedes that the App Store is not the only, or even most common, source for Telegram: Telegram can be downloaded and used through other smartphone app stores like the Android store, or via the web, and the vast majority of Telegram users have not downloaded the app from the App Store.  (*Id.* ¶¶ 31, 35, 74; *id.* at Ex. B, at 3.)  This means that, even if Apple did remove Telegram from the App Store, users would still be able to create the offensive content that has allegedly harmed Ginsberg, and Ginsberg would still be able to access that content—a necessary implication of the FAC that makes showing causation impossible.

Lastly, the two-year statute of limitations for negligence claims bars Ginsberg's NIED claim.  *See So v. Shin*, 212 Cal. App. 4th 652, 662 (2013), *as modified on denial of reh'g* (Jan. 28, 2013); Cal. Civ. Proc. Code § 335.1.  The FAC does not claim that Ginsberg's emotional harm began with his purchase of an iPhone in early 2020, but instead traces his distress to his general awareness of hate speech on Telegram.  (FAC ¶¶ 4, 44, 82, 102.)  As alleged in the FAC, it was "well known" and "widely reported" since 2013 that Telegram was supposedly violating the Guidelines.  (*Id.* ¶ 102; *see also id.* ¶ 44 ("Since its launch in

21

2013, Telegram has been the subject of derision for facilitating voices of violence and extremism.").)
Therefore, according to his own allegations, Ginsberg necessarily became aware of Apple's purported
"negligence" eight years ago.  Because Ginsberg waited eight years to sue Apple for negligence, his
negligence claim is barred.

<strong>2. Plaintiffs Fail to State a Claim for Violation of the "Unfair" Prong of the UCL.</strong>

The FAC does not allege a viable claim that Apple's business practices are "unfair" under the UCL.
The statute, codified as Section 17200 of the California Business and Professions Code, prohibits "unfair
competition," which is defined to "include any unlawful, unfair or fraudulent business act or practice."
Cal. Bus. & Prof. Code § 17200.  To determine whether a business practice is "unfair" under Section
17200, "courts consider either: (1) whether the challenged conduct is tethered to any underlying
constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust
law, or violates the policy or spirit of an antitrust law; (2) whether the practice is immoral, unethical,
oppressive, unscrupulous or substantially injurious to consumers; or (3) whether the practice's impact on
the victim outweighs the reasons, justifications and motives of the alleged wrongdoer."  *Doe v. CVS
Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020) (affirming dismissal of UCL "unfair" claim)
(citations and internal quotation marks omitted).  Here, Plaintiffs plead the third type of "unfair"
competition claim; specifically, Plaintiffs allege that the "[t]he gravity of the harm to Ambassador Ginsberg
and members of the public resulting from [Apple's] unfair acts and practices outweighed any conceivable
reasons, justifications, and/or motives of Apple for engaging in such unfair acts and practices."  (FAC ¶
112.)  This claim fails for two reasons.

First, as discussed above, *see supra*, at III.B.2, Plaintiffs have failed to plausibly allege they
suffered *any* economic harm as a result of Apple's alleged conduct.  In the absence of any harm cognizable
under the UCL, Plaintiffs cannot establish that the balancing test tips in their favor.

Second, Plaintiffs' claim of unfairness is predicated on the allegation that Apple's "acts and
practices were unfair because they caused Ambassador Ginsberg to falsely believe that [] Apple would
comply with their own policies and terms of service," inducing Ginsberg "to purchase Apple's products
believing that Apple would not allow Telegram on the App Store."  (FAC ¶ 109.)  Yet Plaintiffs do not

1   plausibly allege that Apple promised Ginsberg that it would enforce its Guidelines in a manner that would

2   result in the removal of Telegram from the App Store.  Nor do they plausibly allege that Ginsberg was

3   induced into purchasing an iPhone based on any such promises.  In fact, Plaintiffs' own allegations lead to

4   the *opposite* conclusion.  Plaintiffs allege that Apple retained "full managerial discretion" over apps made

5   available on the App Store.  (*Id.* ¶ 98.)  Ginsberg was also fully aware when he purchased his iPhone that

6   Apple is not responsible to iPhone users "for third party materials included within or linked from [App

7   Store apps]."  (*Id.* ¶ 4; *supra*, at fn. 2.)  Moreover, according to Plaintiffs, it was reportedly "well known"

8   as early as 2013—seven years before Ginsberg allegedly purchased his iPhone—that Telegram was

9   supposedly hosting offensive user-generated content in violation of the Guidelines.  (FAC ¶ 102.)  Yet

10  Apple has allegedly "not removed Telegram from the App Store nor undertaken any action to compel

11  Telegram to come into compliance with the app guidelines."  (*Id.* ¶ 103.)

12          Given the above, Plaintiffs have failed to plausibly allege that any of Apple's acts or practices could

13  have possibly induced Ginsberg into purchasing an iPhone with the belief that Apple would remove

14  Telegram from the App Store.  In the absence of a viable factual predicate for Apple's alleged "unfair acts

15  and practices," Plaintiffs' UCL unfair claim must fail.

16          **3.      Plaintiffs Fail to State a Claim for Violation of the "Unlawful" Prong of the**
            **UCL.**

17

18          The FAC also does not allege a viable claim that Apple's business practices are unlawful under the

19  UCL.  "The unlawful prong of the UCL 'borrows violations of other laws and treats them as unlawful

20  practices,' which the UCL then 'makes independently actionable.'"  *Elias v. Hewlett-Packard Co.*, 903 F.

21  Supp. 2d 843, 858–59 (N.D. Cal. 2012) (quoting *Cel–Tech Communications, Inc. v. Los Angeles Cellular*

22  *Tel. Co.*, 20 Cal.4th 163, 180 (1999)).  Plaintiffs allege that Apple violates the "unlawful" prong of the

23  UCL by aiding and abetting Telegram users' violations of California's hate crime law, California Penal

24  Code Section 422.6, by "continu[ing] to allow Telegram to be downloaded from the App Store."  (FAC ¶

25  122.) This claim — as with Plaintiffs' UCL "unfair" claim — is precluded by Plaintiffs' failure to plausibly

26  allege any economic harm resulting from Apple's alleged conduct.  *See supra*, at III.B.2.  Furthermore,

27  Apple's alleged conduct comes nowhere close to meeting the standard for aiding and abetting a violation

28

Case No. 5:21-cv-00425-EJD
APPLE'S NOTICE OF MOTION AND MOTION; MEMORANDUM

of Section 422.6; nor does the FAC sufficiently allege an underlying violation of Section 422.6 itself.

Section 422.6 is a specific intent criminal statute that prohibits the use of force or threats to willfully interfere with, injure, intimidate, or oppress another person's legally protected rights, because of that person's protected status. *In re M.S.*, 10 Cal. 4th 698, 712–20 (1995); California Penal Code § 422.6.  The conduct at issue must be directed toward a specific person or "a specific group of individuals, *not abstract groups or protected classes*." *In re M.S.*, 10 Cal. 4th at 711 (emphasis added).  Moreover, "[t]he conduct which section[] 422.6 . . . is intended to reach is not the mere reckless use of force, even if motivated by ill will, but rather the execution of a specific purpose to deprive another individual of his or her civil rights." *People v. Lashley*, 1 Cal. App. 4th 938, 949 (1991).  Under California law, "[w]hen the offense charged is a specific intent crime" like Section 422.6, an aider-and-abettor "must share the specific intent of the perpetrator," meaning that "the accomplice knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime."  *People v. McCoy*, 25 Cal. 4th 1111, 1117–18 (2001) (citation and internal quotation marks omitted).

The FAC does not and cannot allege that Apple had the requisite specific intent to aid and abet any Telegram user's alleged violation of Section 422.6 *against Ginsberg*.[8]  It does not allege that Apple knew the "full extent" of any specific Telegram user's intent to violate the law, or identify *any* acts that Apple undertook to specifically aid or encourage any Telegram user's use of force or threats against any individual.  Rather, the FAC alleges only that Apple "allow[s] Telegram to be downloaded from the App Store" with "aware[ness]" that some unspecified Telegram users "use the application in violation of" Section 422.6. (FAC ¶¶ 121–22.)  But such passive conduct and supposed general awareness is worlds away from aiding and abetting a violation of Section 422.6, given that even the "reckless use of force" is insufficient to establish a violation of that specific intent statute. *Lashley*, 1 Cal. App. 4th at 949.  There is nothing in the FAC to suggest that Apple knows or shares the "specific intent" of a particular Telegram user to "deprive another individual of his or her civil rights." *Id.*

---

[8] Section 422.6 is entirely inapplicable to Plaintiff CSW, an organizational entity, as the statute applies only to hate crimes directed towards "a specific person or group of persons."  Cal. Penal Code § 422.6.

Case No. 5:21-cv-00425-EJD
APPLE'S NOTICE OF MOTION AND MOTION; MEMORANDUM

Nor does the FAC allege that any specific Telegram user acted with the requisite intent to deprive Ginsberg of his civil rights in violation of Section 422.6.  Rather, the FAC alleges only that "[u]sers of Telegram have repeatedly and consistently used the app to plan and format [sic] racially motivated terrorist plots."  (FAC ¶ 119.) Because Plaintiffs have failed to allege an underlying violation of Section 422.6 as to Ginsberg, their aiding and abetting theory against Apple necessarily fails for that reason as well, and Plaintiffs' claim under the unlawful prong of the UCL must be dismissed.

### D.     Plaintiffs' FAC Should Be Dismissed Without Leave to Amend.

The Ninth Circuit has made clear that a court need not grant leave to amend if doing so would be an "exercise in futility" or "where the amended complaint would also be subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295, 1298 (9th Cir. 1998); *see also Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) ("Although a district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.") (citations omitted); *Reyes-Aguilar v. Bank of Am. N.A.*, No. 13-5764, 2014 WL 2153792, at *10 (N.D. Cal. Mar. 20, 2014) (dismissing with prejudice claim that relied on "fatally flawed" theory).  Plaintiffs have already been given an opportunity to amend and have failed to cure the numerous defects Apple raised in its original motion to dismiss.  As such, Plaintiffs' FAC should be dismissed without leave to amend further.  *See Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004) (noting that a district court has "particularly broad" discretion to deny leave to amend when a plaintiff has already amended his complaint) (citation omitted).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Apple respectfully requests that the Court grant the Motion and dismiss Plaintiffs' FAC with prejudice and without leave to amend.

Dated:  June 25, 2021                                           JENNER & BLOCK LLP


                                                               By: */s/ David R. Singer*
                                                                    David R. Singer
                                                                    Attorney for Defendant Apple Inc.

25